IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Roger D. Davis, Jr.,                    )       Civil Action No. 8:15-cv-02991-DCN-JDA
                                        )
              Plaintiff,                )       **REPORT AND RECOMMENDATION**
                                        )       **OF MAGISTRATE JUDGE**
       vs.                              )
                                        )
Carolyn W. Colvin,                      )
Commissioner of Social Security,        )
                                        )
              Defendant.                )

       This matter is before the Court for a Report and Recommendation pursuant to Local

Rule 73.02(B)(2)(a), D.S.C., and Title 28 U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this

action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final

decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's

claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2]

For the reasons set forth below, it is recommended that the decision of the Commissioner

be affirmed.

**PROCEDURAL HISTORY**

       On July 19, 2012, Plaintiff filed applications for DIB and SSI, alleging disability

beginning May 20, 2012.  [R. 18, 179–182.]  The claims were denied initially and upon

_____

       [1]A Report and Recommendation is being filed in this case, in which one or both parties
declined to consent to disposition by a magistrate judge.

       [2]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social
Security after a hearing under paragraph (1) shall be subject to judicial review as provided
in section 405(g) of this title to the same extent as the Commissioner's final determinations
under section 405 of this title."  42 U.S.C. § 1383(c)(3).

reconsideration by the Social Security Administration ("the Administration"). [R. 53–103.] Plaintiff filed a request for hearing before an administrative law judge ("ALJ"), and on November 7, 2013, ALJ Nicole S. Forbes-Schmitt conducted a hearing on Plaintiff's claims. [R. 30–52.]

On January 31, 2014, the ALJ issued her decision finding that Plaintiff had not been under a disability, as defined in the Social Security Act ("the Act"), from May 20, 2012, through the date of the decision.  [R. 18–25.]  At Step 1[3], the ALJ found Plaintiff meets the insured status requirements of the Act through September 30, 2014, and had not engaged in substantial gainful activity since May 20, 2012, the alleged onset date.  [R. 20, Findings 1 & 2.]  At Step 2, the ALJ found that Plaintiff had a severe impairment of degenerative disc disease of the lumbar spine.  [R. 20, Finding 3.]  The ALJ also noted that Plaintiff had non-severe impairments of status-post left thumb amputation with re-attachment in 2005, hypertension, and obesity.  [R. 20–21.]

At Step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. [R. 21, Finding 4.]  The ALJ specifically considered Listing 1.04.  [*See Id.*]  Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ found that Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

404.1567(a) and 416.967(a) with a sit/stand option at will and
no exposure to hazards.

[R. 21, Finding 5.]  Based on this RFC, at Step 4, the ALJ determined Plaintiff was unable

to perform his past relevant work as a saw operator or floor finisher.  [R. 24, Finding 6.]

In light of Plaintiff's age, education, work experience, and RFC, the ALJ determined that

there were jobs that existed in significant numbers in the national economy that Plaintiff

could perform.  [R.24, Finding 10.]  Thus, the ALJ found that Plaintiff had not been under

a disability, as defined in the Act, from May 20, 2012, through the date of the decision.  [R.

25, Finding 11.]

Plaintiff filed a request for review of the ALJ's decision with the Appeals Council,

which denied review on May 29, 2015.  [R. 1–3.]  Plaintiff commenced an action for judicial

review in this Court on July 30, 2015.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and

contains legal errors warranting the reversal and remand of the case.  [*See* Docs. 11, 15.]

Specifically, Plaintiff contends that substantial evidence does not support the ALJ's

rejection of evidence regarding Plaintiff's multiple impairments and that the ALJ failed to

follow the treating physician rule.  [Doc. 11 at 7–8; Doc. 15 at 3–4.]

The Commissioner contends the ALJ's decision should be affirmed because there

is substantial evidence of record that Plaintiff was not disabled within the meaning of the

Act.  [*See* Doc. 12.]   Specifically, the Commissioner contends substantial evidence

supports the ALJ's assessment of Plaintiff's subjective complaints and RFC findings, and

3

that the ALJ properly weighed Dr. Glaser's conclusory one-sentence opinion that Plaintiff was disabled. [*Id.* at 13–19.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to

4

determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual

5

functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is

material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

7

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

I.    **The Five Step Evaluation**

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the

8

national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575, 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* §§ 404.1521, 416.921. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must

make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

**C.**     ***Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[5]   20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

**D.**     ***Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[6] with the physical and mental demands of the kind

---

[5]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[6]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.  *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[7] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that

---

[7]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. 20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

11

claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's

opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. §§ 404.1527(d), 416.927(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. §§ 404.1517, 416.917. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716,

723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. §§ 404.1528, 416.928. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> > **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Relevant Medical History**

On May 18, 2012, Plaintiff had x-rays of his thoracic and lumbar spines due to complaints of back pain. [R. 299.] Results from the x-ray of the thoracic spine showed normal bone mineral density; minimal mid-thoracic vertebral body wedge-shaped deformity affecting at least two vertebral bodies with normal height and alignment in the remaining vertebral bodies; and no bone lesions evident; visualized pedicles and posterior elements, disc spaces and spinal canal were preserved. [*Id*.] The x-ray of the lumbar spine showed vertebral bodies with normal height, density and alignment, with disc spaces preserved, and mild posterior facet joint artropathy seen from L4-S1 with remaining posterior elements, spinal canal and SI joints being normally defined. [*Id*.]

17

On May 24, 2012, Plaintiff saw Dr. Charles Nivens ("Dr. Nivens") with low back and leg pain that was worsening and exacerbated by ambulating, bending, driving, prolonged sitting, prolonged standing, or sitting.  [R. 301.]  On examination, Plaintiff's gait and station were antalgic; motor strength 5/5 overall; straight leg raises negative at 90° in the left lower extremities and positive in the right lower extremities; and pain to palpation in the right lower gluteal muscle, over the lumbar paraspinals on the left and right, and the upper gluteal muscle on the upper right.  [R. 302.]  Dr. Nivens ordered x-rays and noted severe disc narrowing at L4-L5, L5-S1; spondylosis at L3-L4; L4-L5; L5-S1; and normal spondylitic changes throughout consistent with Plaintiff's age and scoliosis. [*Id.*]

On June 8, 2012, Plaintiff underwent an MRI of the lumbar spine at the Medical University of South Carolina ("MUSC") due to his complaints of chronic back pain.  The MRI showed mild disc protrustion at L4-L5 and L5-S1. [R. 325.]  On June 13, 2012, Plaintiff saw Dr. John A. Glaser ("Dr. Glaser") with the Spine Clinic at MUSC ("Spine Clinic") on referral from Dr. Blair B. Turnage ("Dr. Turnage") for his L4-L5 disc herniation.  [R. 322.]  On exam, Dr. Glaser noted that Plaintiff's extremities were normal, he had normal balance but very slow gait, had spine tenderness, and no obvious motor or sensory deficit.  [*Id.*] Dr. Glaser assessed Plaintiff as having "disabling" back and bilateral leg pain which could not be explained based on his MRI.  [R. 322–23.]  Dr. Glaser saw no surgical options and referred him to Dr. Christopher Merrell ("Dr. Merrell"), Assistant Professor, Department of Orthopaedic Surgery at MUSC to see if injections might help.  [*Id.*]

On June 13, 2012, Plaintiff saw Dr. Merrell regarding his lumbar radicular pain on referral from Dr. Glaser.  [R. 319.]  Plaintiff complained of back pain, thoracic and lumbar with severe pain, described as a 10/10 in intensity into the legs with numbness or tingling

18

into the feet dorsally and at the palmer surfaces. [*Id.*] Plaintiff had an MRI done, but it did not reveal much evidence of any neural compression. [*Id.*] Because Plaintiff was in severe pain and not responding well to Lortab or muscle relaxers, Dr. Merrell proceeded with an interlaminar epidural steroid injection ("ESI") at L5–S1 for therapeutic purposes. [*Id.*] Plaintiff was to return in three to four weeks. [*Id.*]

On July 17, 2012, Plaintiff saw Dr. Merrell regarding his degenerative disc disease and lumbar radiculitis. [R. 316–17.] Treatment notes indicated Plaintiff saw Dr. Glaser on June 21, 2012, and had an L5-S1 injection which did blunt his pain about 48–50% for a while but was wearing off. [R. 316.] On physical exam, Plaintiff was tender at the lumbrosacral junction, but he had no ataxia or antalgia and his hip internal range of motion was non-provocative and symmetric. [*Id.*] Plaintiff was assessed with lumbar radiculitis, and degenerative disc disease at L4-L5 and L5-S1. [*Id.*] Dr. Merrell ordered another ESI at L5-S1; kept Plaintiff out of work another month; prescribed physical therapy for passive modalities with transition to home exercise program; a back brace; and continued gabapentin for neuropathic pain and refilled hydrocodone for pain relief. [*Id.*]

On August 1, 2012, Plaintiff presented to Dr. Merrell reporting that he was feeling worse when he sits and leans back, and that he gets numbness and tingling into his feet when he does so. [R. 396.] Treatment notes indicated Plaintiff had been using Lortab around-the-clock and had a back brace; had tried physical therapy with TENS and ultrasound, neither of which was tolerated well; and had tried a Medrol Dosepak which worked well. [*Id.*] On physical exam, Dr. Merrell noted that Plaintiff continues to have remarkable tenderness at the lumbosacral junction; has central adiposity; has loss of lumbar lordosis and forward lean; has no ataxia or antalgia; and has reflexes that are

19

symmetric and light touch sensation which is intact.  [*Id*.] Dr. Merrell assessed Plaintiff with lumbar radiculitis with severe symptoms, and degenerative disc disease at L4-L5 and L5-S1 which is relatively mild.   [*Id*.]   Dr. Merrell continued to keep Plaintiff out of work, repeated ESI at L5-S1, continued Plaintiff on physical therapy and continued him with the back brace as tolerated.  [*Id*.]

On August 15, 2012, Plaintiff returned to Dr. Merrell with continued tenderness at the lumbosacral junction with a large amount of central adiposity. [R. 393.] Plaintiff walked with a forward lean with no ataxia or antalgia.  [*Id*.]  A review of Plaintiff's MRI revealed mild disc disease at L4-L5 and L5-S1 with borad-based disc bulges.  [*Id*.]  Plaintiff was directed to continue with physical therapy and to stay out of work for at least the next two months. [*Id*.]

On October 5, 2012, Plaintiff was seen by Dr. Stephen Gibert ("Dr. Gibert") with MUSC  complaining of back pain and difficulty sitting, standing, sleeping and walking.  [R. 383.]  Plaintiff indicated that he had lumbar pain and pain with numbness radiating down both legs. [R. 385.]  Dr. Gibert noted that Plaintiff's MRI was "unremarkable" and that his symptoms were consistent with nerve impingement as well as pyriformis syndrome.  [*Id*.]

On October 10, 2012, Plaintiff was seen by Dr. Glaser on follow up indicating that the injections worked briefly and that he had been discussing whether or not to do a discogram. [R. 371.] Plaintiff also indicated he also tried nonsteroidal medications, as well as a good course of physical therapy.  [*Id*.]  Dr. Glaser noted that Plaintiff has had no sciatic pain since his injections, but that he does get some paresthesia in the leg. [R. 372.] Dr. Glaser noted that Plaintiff was still "miserable" and that Plaintiff indicated his back pain was 90% of his problem. [R. 380.]

20

On November 2, 2012, Plaintiff was seen by Dr. Gibert who, along with Dr. Brystol L. Henderson ("Dr. Henderson"), spoke with Plaintiff about engaging in physical therapy another month and then, at the end of that time, once again probing the facets of the musculature and doing a medial branch block for diagnostic purposes. [R. 373.] Dr. Gibert indicated that a discogram would be technically very difficult with Plaintiff, if not impossible, and that Plaintiff clearly had other sources of pain in addition to his discs. [*Id*.] Dr. Gibert noted that there was a good chance Plaintiff would gradually improve and not require a discogram or surgery, although he does have quite a bit of facet pain. [*Id*.] Dr. Henderson assessed Plaintiff with lumbosacral pain, myofascial pain (not improved with trigger point injections), and lasting improvement in the leg symptoms from the piriformis injection. [R. 374.]

On January 17, 2013, Plaintiff was seen by Dr. Glaser on referral from his primary care physician Dr. Harold Harvey ("Dr. Harvey") for his lumbar pain with right-greater-than-left radiculopathy consisting of pain and numbness. [R. 399.] Treatment notes indicated that Plaintiff had exhausted non-operative measures and presented to Dr. Glaser for his preoperative conference to undergo L4-L5 posterior laminectomy and fusion. [*Id*.] Plaintiff underwent a decompression of his L4-L5 with bilateral partial laminectomy, bilateral facetectomy, and lateral recess decompression, as well as, instrumentation at L4-L5 with pedicle screws. [*Id*.] Upon discharge, Plaintiff was directed to lift nothing heaver than 10 pounds for 6 weeks. [R. 400.] Plaintiff was also directed not to drive or operate machinery when taking narcotics, and to wear a lumbar corset for comfort when out of bed. [*Id*.]

On January 22, 2013, Plaintiff was seen by Dr. Glenn Welcker ("Dr. Welcker") for redness in his right leg after having back surgery the week prior. [R. 433.] Plaintiff was

21

admitted to the hospital and an ultra sound was done to rule out deep vein thrombosis ("DVT"). [R. 435.] The ultrasound was negative for DVT, and Plaintiff was discharged home with a prescription for Cipro and instructions to elevate his leg as much as possible and to follow up with his orthopaedic surgeon. [R. 437.]

On February 6, 2013, Dr. Glaser signed a letter indicating that it was his medical opinion that Plaintiff "remain disable" [*sic*] and "may not return to work until further notice." [R. 452.]

On February 27, 2013, two months after surgery, Plaintiff reported feeling much better than he did prior to surgery, but still having a fair amount of mechanical back pain. [R. 460.] Plaintiff also reported being laid off from his job; and the x-rays today showed good position of his hardware and bony elements. [*Id*.]

On April 10, 2013, about twelve weeks out from surgery, Plaintiff was seen by Dr. Glaser reporting that his pain was far better, but that he was sore and stiff. [R. 460.] Plaintiff reported walking about 3 miles per day and losing his insurance so that he was not able to afford his medications. [R. 460.] Plaintiff had no obvious motor deficits but noted an area of altered sensation in the right distal anterior thigh. [*Id*.]

On April 19, 2013, Plaintiff called Dr. Glaser's office complaining of weakness in his legs and of feeling like the "rods were coming out" of his back; an appointment was made. [R.458.] On April 24, 2013, Plaintiff saw Dr. Glaser reporting a sudden onset of severe pain in his back and extending to the top of his buttocks which began about a week prior. [R. 457.] Plaintiff did not have any insurance or money to pay for an x-ray, so Dr. Glaser wrote him a prescription for a Medrol Dosepack and some oxycodone and advised him to return in three weeks. [R. 458.]

On May 15, 2013, Plaintiff saw Dr. Glaser and reported that he "is getting a little bit better," was able to walk around a little bit and that the pain was becoming more tolerable; the x-rays today showed no evidence of hardware loosening and "good apposition of his endplates to his cage." [R. 455.] Dr. Glaser prescribed oxycodone again, and Plaintiff was to continue to wean off those. [*Id.*]

On July 31, 2013, Plaintiff saw Dr. Glaser on follow up and reported that he had, intermittently, been having a fair amount of pain and weakness in his legs and had fallen a few times. [R. 454.] Plaintiff also reported feeling far better than prior to surgery, starting to try to exercise, and walking about a half a mile per day because he could not afford physical therapy. [*Id.*] Dr. Glaser reviewed x-rays from today and saw no evidence of loosening or instability. [*Id.*] Dr. Glaser also completed disability paperwork indicating his doubt that Plaintiff would return to his job as it was physically demanding. [*Id.*]

**Treating Physician Opinions and Consideration of Multiple Impairments**

Plaintiff argues that the ALJ failed to follow the treating physician rule with respect to Dr. Glaser's opinion that Plaintiff is disabled because there was no persuasive contradictory evidence to rebut his opinion. Also, Plaintiff contends that substantial evidence does not support the ALJ's rejection of evidence regarding Plaintiff's multiple impairments. The Court disagrees.

### *The ALJ's Treatment of Medical Opinions*

The ALJ explained her review and weighing of the medical evidence as follows:

> As for the opinion evidence, pursuant to 20 CFR §404.1527 and Social Security Rulings 06-3p, 96-6p and 96-2p, I have considered the medical opinions, which are statements from acceptable medical sources which reflect judgments about the nature and severity of the impairments and resulting

23

limitations, of the claimant's treating physicians, evaluating physicians, and the state agency medical consultants.

While Dr. Glaser and Dr. Christopher Merrell, treating orthopedists, reported that the claimant should not return to his past work in construction, the evidence does not support a conclusion that the claimant is disabled from all work activity (Exhibit 7F).

I accord less than controlling weight to Dr. Glaser's opinion from February 2013 that the claimant is not capable of performing any work (Exhibit 12F). The treating physician's opinion is more a vocational than a medical opinion and thus is not worthy of great weight. The doctor's assessment was based primarily on the claimant's subjective symptoms, which, for reasons stated in detail above, are not reliable. Additionally, the doctor's assessment was devoid of any explanation, rationale, clinical findings, or reference to objective testing. The lack of substantial support from the other objective evidence of record, especially subsequent treatment notes documenting that the claimant was doing much better since his surgery with increased activity, no focal motor deficits, and no loosening or instability of hardware, renders the opinion less persuasive.

I give no weight to the Unum disability report set forth in Exhibit 11F as the form fails to identify the name of the patient to which it applies.

Regarding the medical opinions of the DDS medical consultants, I accord them significant weight as their opinions are generally consistent with the other evidence of record.

In sum, the record documents that the claimant's degenerative disc disease improved greatly after he underwent surgery in January 2013. While he has had some exacerbations of pain and limitation since that time, he is generally doing well. While I do not find the claimant fully credible in his subjective complaints of a limited ability to sit, stand, walk, lift, and carry, or a need to lie down throughout the day, I have given him the benefit of the doubt in limiting him to sedentary work with a sit/stand option and no exposure to hazards. There is no evidence to support the representative's contention that the claimant would miss three or more days of work per month or that he would be frequently off-task. He reported that he

24

> stopped taking pain medications in July 2013, and there is no documentation of side effects from his medications prior to that time. I cannot find the claimant's allegations that he is incapable of all work activity to be credible. The claimant's daily activities are inconsistent with his allegations of disabling back pain, but are fully consistent with the residual functional capacity described above.

[R. 23.]

### Discussion

The responsibility for weighing evidence falls on the Commissioner or the ALJ, not the reviewing court. *See Craig*, 76 F.3d at 589; *Laws*, 368 F.2d at 642; *Snyder*, 307 F.2d at 520. Prior Fourth Circuit precedent had established the weight which an ALJ must accord to an opinion of a treating physician. Under the "treating physician rule," the opinion of a claimant's treating physician must "be given great weight and may be disregarded only if there is persuasive contrary evidence." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987), *superseded by* 20 C.F.R. § 404.1527. It appears to the Court that Plaintiff attempts to rely primarily on the superseded "treating physician rule."[8]

On August 1, 1991, the Administration promulgated a regulation entitled "Evaluating medical opinions about your impairment(s) or disability." 20 C.F.R. § 404.1527. This regulation superseded the Fourth Circuit's "treating physician rule." *See Winford v. Chater*, 917 F. Supp. 398, 400–01 (E.D.Va. 1996) (explaining the "treating physician rule" was superseded by regulation). Now, the legal standard which applies in weighing the opinion of a treating physician is contained in 20 C.F.R. § 404.1527.

---

[8]Admittedly, Plaintiff cites 20 C.F.R. § 404.1527(d)(2); however, the factors are not discussed and more weight seems to be placed on the old rule articulated in *Coffman*.

25

Under § 404.1527, the opinion of a treating physician is entitled to more weight than the opinion of a non-treating physician. It is only given controlling weight, however, if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). This standard, of course, is more stringent than the old "treating physician rule," which accorded a treating physician's opinion controlling weight unless the record contained persuasive evidence to the contrary. *See Coffman*, 829 F.2d at 517. Under § 404.1527, if an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must then consider the weight to be given to the physician's opinion by applying five factors identified in the regulation: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527(d)(2)(iii) and (d)(3)-(5).

With respect to the ALJ's weighing of the medical opinions in this case, Plaintiff argues that "[t]he ALJ's decision grossly overestimates [Plaintiff's] level of functioning and is quite selective in choosing those medical records to which significant weight is afforded." [Doc. 11 at 8.] Plaintiff also argues that there is no "persuasive contradictory evidence to rebut the opinion of Dr. Glaser that [Plaintiff] is disabled." [*Id*.; Doc. 15 at 3–4.] Plaintiff, however, fails to direct the Court to any evidence of record, selectively excluded from discussion by the ALJ, that establishes a level of functioning that would preclude sedentary work by Plaintiff. And, Plaintiff also fails to direct the Court to any error in the ALJ's finding with respect to Dr. Glaser's opinion that it was void of explanation, rationale, clinical

26

findings or reference to objective testing. Plaintiff bears the burden of proof at the first four steps of the analysis. *See Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir.1983). However, Plaintiff did little to meet this burden.

And, this Court finds that substantial evidence supports the ALJ's decision to give Dr. Glaser's opinion less than controlling weight / less persuasive, and the ALJ sufficiently explained her reasons for discounting the opinion. For example, the ALJ reasonably relied on other substantial evidence in the record that was inconsistent with Dr. Glaser's opinion—the evidence that Plaintiff's back problems had improved after the January 2013 surgery because it was generally successful in relieving the symptoms. [R. 22–23.] The ALJ noted that Plaintiff stated to doctors that he was doing better after the surgery; in April 2013 he was walking 3 miles per day; he stopped taking pain medications in July 2013; although Plaintiff reported a period of increased back pain and weakness, there was no indication that he required emergency treatment or inpatient hospitalization; and Plaintiff's described daily activities did not support his complaints of disabling limitations. [*Id*.] Furthermore, in considering the opinions of Plaintiff's treating physicians, the ALJ concluded that, while Dr. Glaser and Dr. Merrell, treating orthopedists, reported that the Plaintiff should not return to his past work in construction, the evidence did not support a conclusion that Plaintiff was disabled from *all* work activity. [R. 23.] The ALJ explained that, with respect to Dr. Glaser's opinion letter, his assessment lacked substantial support from the other objective evidence of record, especially subsequent treatment notes documenting that the Plaintiff was doing much better since his surgery with increased activity, no focal motor deficits, and no loosening or instability of hardware. [*Id*.] The Court

27

also notes that there is no opinion evidence from a treating physician indicating that Plaintiff was precluded from *all* work activities due to his impairments.

Plaintiff's general disagreement with the ALJ's decision, without directing the Court to specific allegations of error, does not open the door for the Court's review of every finding made by the ALJ. To the contrary, the Court notes that the ALJ sufficiently explained her consideration of the evidence of record related to Plaintiff's multiple impairments, as well as Plaintiff's testimony regarding the same, during the RFC analysis. [*See* R. 20–23.]

Therefore, for the reasons stated above, the Court finds the ALJ properly considered all of Plaintiff's impairments and properly explained her reasoning for the weights that she gave to the physician opinions.

## <u>CONCLUSION AND RECOMMENDATION</u>

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be AFFIRMED.

**IT IS SO RECOMMENDED**.


s/Jacquelyn D. Austin
United States Magistrate Judge

January 4, 2017
Greenville, South Carolina