IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| ROGER D. DAVIS, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 8:15-cv-2991-DCN |
| vs. ) | |
| ) | **ORDER** |
| NANCY A. BERRYHILL, *Acting* ) | |
| *Commissioner of Social Security*, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

  This matter is before the court on United States Magistrate Judge Jacquelyn D. Austin's Report and Recommendation ("R&R") that the court affirm Acting Commissioner of Social Security Nancy A. Berryhill's (the "Commissioner") decision denying plaintiff Roger D. Davis, Jr.'s ("Davis") application for disability insurance benefits ("DIB") and social security insurance benefits ("SSI"). For the reasons set forth below, the court adopts the R&R and affirms the Commissioner's decision.

## I.   BACKGROUND[1]

### A.   Procedural History

  Davis filed applications for DIB and SSI on July 19, 2012. Both applications allege disability beginning May 20, 2012 (the "alleged onset date"). The Social Security Administration denied Davis's claims initially and on reconsideration. Davis requested a hearing before an administrative law judge ("ALJ"), and ALJ Nicole S. Forbes-Schmitt conducted a hearing on November 7, 2013. The ALJ issued

---

[1] The following facts are taken from the R&R, unless otherwise noted.

a decision on January 31, 2014, finding that Davis was not disabled within the meaning of the Social Security Act (the "Act") from his alleged onset date through the date of the decision. Davis requested Appeals Council review of the ALJ's decision. The Appeals Council declined Davis's request, rendering the ALJ's decision the final action of the Commissioner.

On July 30, 2015, Davis filed this action seeking judicial review of the ALJ's decision. ECF No. 1. The magistrate judge issued the R&R on January 4, 2017, recommending that this court affirm the ALJ's decision. Davis filed objections to the R&R on February 1, 2017, ECF No. 20, and the Commissioner responded to Davis's objections on February 15, 2017. ECF No. 22. The matter is now ripe for the court's review.

### B.     Medical History

Because Davis's medical history is not directly at issue here, the court dispenses with a lengthy recitation thereof and instead notes a few relevant facts. Johnson was born on November 8, 1973 and was 38 years old on the alleged onset date. Tr. 24. He communicates in English and has limited education. Id.

### C.     ALJ's Decision

The ALJ employed the statutorily required five-step sequential evaluation process to determine whether Davis had been under a disability since the alleged onset date. The ALJ first determined that Davis had not engaged in substantial gainful activity during the relevant period. Tr. 20. At step two, the ALJ found that Davis suffered from a single severe impairment: degenerative disc disease of the lumbar spine. Id. At step three, the ALJ determined that Davis did not have an

impairment or combination of impairments that met or equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  Tr. 21.  Before reaching the fourth step, the ALJ determined that Davis had the residual functional capacity ("RFC") to perform "sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.976(a)" with the option to sit or stand at will and with no exposure to additional hazards.  Id.  At step four, the ALJ found that Davis was unable to perform his past relevant work as a saw operator and floor finisher, but based on his age, education, and RFC, Davis could perform certain jobs that existed in significant numbers in the national economy.  Tr. 24.  Therefore, the ALJ concluded that Davis had not been under a disability within the meaning of the Act since the alleged onset date.  Tr. 25.

## II.  STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made.  28 U.S.C. § 636(b)(1).  A party's failure to object is accepted as agreement with the conclusions of the magistrate judge.  See Thomas v. Arn, 474 U.S. 140, 149–50 (1985).  The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court.  Mathews v. Weber, 423 U.S. 261, 270–71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied."  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "more than a

mere scintilla of evidence but may be somewhat less than a preponderance." Id. (internal citations omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id. Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]," not on the reviewing court. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citation omitted). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987)

### III.  DISCUSSION

Davis raises two objections to the R&R. First, Davis objects to the magistrate judge's conclusion that the ALJ's decision was supported by substantial evidence.[2] Pl.'s Objections 2–4. Second, Davis contends that the magistrate judge wrongly concluded that the ALJ properly analyzed the opinion of Davis's orthopedic surgeon, Dr. John Glaser ("Dr. Glaser"). Id. at 4–5. The court addresses each objection in turn.

---

[2] Davis offers this objection under the heading "Substantial evidence does not support the ALJ's rejection of the evidence regarding Mr. Davis's multiple impairments." Pl.'s Objections 2. This reference to Davis's "multiple impairments" might be read as an objection to the ALJ's conclusion that Davis's left thumb amputation, hypertension, and obesity were non-severe impairments. Tr. 20–21. However, as outlined in part III.A. and footnote 3 below, the substance of Davis's objection focuses on the ALJ's treatment of certain evidence of the pain Davis experienced in connection with his degenerative disc disease. Id. at 2–4. Davis does not provide any discussion of his non-severe impairments, much less explain why the ALJ should have considered them to be severe. Id. Therefore, the court concludes that Davis does not object to the ALJ's treatent of his left thumb amputation, hypertension, and obesity as non-severe impairments.

4

A.     **Substantial Evidence**

Davis first argues that the ALJ failed to show that her decision was supported by substantial evidence. Id. at 2–4. This argument consists of an outline of the general principles governing the ALJ's analysis and an assertion that "[a]pplying these principles to the present case, the law and facts below preclude affirmation of the ALJ's findings regarding the medical source opinions, impairment severity, and medical equivalency."[3] Id. at 2–3. Following this statement, Davis notes that the record contains "continued complaints of pain by Mr. Davis [and] objective clinical evidence representing work-related limitations in function." Id. at 3. Davis then proceeds to list various pieces of evidence showing the progression and treatment history of his degenerative disc disease.[4] Id. at 3–4. Davis appears to contend that this evidence precludes the court from affirming the ALJ's decision, either because it shows that the ALJ's decision did not rest on substantial evidence, or because the ALJ failed to properly explain her decision.[5] Both arguments fail.

---

[3] Despite this reference to "medical source opinions, impairment severity, and medical equivalency," Davis's first objection does not specifically address any of these issues. Pl.'s Objections 2–4. As the court recently explained in Best v. Berryhill, No. 0:15-cv-02990-DCN, 2017 WL 835350, at *2 (D.S.C. Mar. 3, 2017), the court "is under no obligation to consider conclusory objections or attempts to challenge the entirety of the R&R without focusing the court's attention on specific errors therein." To the extent Davis's first objection seeks to challenge anything other than the ALJ's evaluation of Davis's degenerative disc disease symptoms, it is conclusory and unspecific.

[4] Davis's objection also refers to the medical history set forth in his initial brief, which contains a more thorough recitation of such evidence. Pl.'s Mot. 2–7. The court has reviewed Davis's initial brief and does not consider the medical history outlined therein to be meaningfully different from the evidence cited in his objections to the R&R.

As set out more fully in part II. above, the court's task is to determine whether the ALJ's decision is "supported by substantial evidence and [was] reached through application of the correct legal standard.'" Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (quoting Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001)). "'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Craig, 76 F.3d at 589). In order to facilitate this determination, the ALJ must "fully explain the weight he has given to obviously probative exhibits." Alexander v. Astrue, No. 4:08-cv-3384, 2010 WL 1254945, at *5 (D.S.C. Mar. 23, 2010) ("If the ALJ does not analyze all the evidence and fully explain the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine the conclusions reached are rational."). However, the ALJ "need not cite every piece of possibly relevant evidence in the record." Fridley v. Astrue, 2014 WL 2468821, at *6 (W.D. Va. June 3, 2014). The touchstone for determining what evidence must be addressed is whether the evidence is so material that failing to address it would prevent the court from determining if the ALJ's decision was supported by substantial evidence. Seabolt v. Barnhart, 481 F. Supp. 2d 538, 548 (D.S.C. 2007) ("The ALJ is not required to discuss every piece of evidence, but if he does not mention material evidence, the court cannot say his determination was supported by substantial evidence.").

The ALJ determined that the symptoms caused by Davis's degenerative disc disease did not prevent him from working. Tr. 21–23. Determining whether a

claimant's "is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) . . . which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (emphasis and internal quotations omitted). If such evidence exists, the ALJ "must evaluate the intensity, persistence, and limiting effects of claimant's symptoms." SSR 96-7P.[6] At the second step of this process, "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." Id.; see also Craig, 76 F.3d at 595 ("[T]his evaluation must take into account not only the claimant's statements about her pain, but also all the available evidence, including the claimant's medical history, medical signs, and laboratory findings []; any objective medical evidence of pain []; and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.").

    This is exactly what the ALJ did here. After outlining Davis's allegations of debilitating pain, the ALJ first found that Davis's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but

---

[6] The court notes that SSR 96-7P was superseded by SSR 16-3P in March 2016 to remove references to the plaintiff's "credibility." SSR 16-3P. However, the ALJ's decision in this case was issued well before SRR 16-3P. Therefore, the court analyzes Plaintiff's objections under SSR 96-7P. See Sullivan v. Colvin, 2017 WL 473925, at *3 (W.D. Va. Feb. 3, 2017) (applying SRR 96-7P). In any event, "the methodology required by both SSR 16-3P and SSR 96-7P, are quite similar. Under either, the ALJ is required to consider [the claimant's] report of his own symptoms against the backdrop of the entire case record." Id.

ultimately found that Davis's allegations were "not entirely credible." Tr. 22. The ALJ placed significant emphasis on the treatment records showing that Davis's back surgery on January 17, 2013 "was generally successful in relieving the symptoms." Id. The ALJ acknowledged that Davis has had "intermittent exacerbations of pain and limitation" but found that, "by all accounts, [Davis] is doing much better." Id. The ALJ also observed that Davis's course of treatment following the surgery was "inconsistent with a level of severity that would preclude [him] from sustaining any work activity." Tr. 22–23 (emphasis added). Finally, the ALJ considered Davis's activities of daily living, particularly his ability to attend church multiple times a week, go shopping, and help with laundry. Tr. 23.

    The court finds no error in this analysis. Dr. Glaser's treating records contain multiple "progress notes" stating that Davis's condition improved significantly after the surgery. Tr. 454–63. In the most recent progress note from July 2013, Davis reported that, while he was experiencing "intermittent" bouts of pain and weakness in his legs, he was "still far better than he was prior to surgery." Tr. 454. These records provide a logical basis for finding that Davis was no longer suffering from incapacitating levels of pain. Even before the surgery, Davis stated that he was able to shop for two and a half hours at a time, and attended church three times a week. Tr. 211–12. The ALJ cited these activities as inconsistent with Davis's complaints of debilitating pain. Tr. 23. If Davis was able to engage in such activities prior to the surgery, it stands to reason that he would be even more active afterward. Therefore, the court concludes that the ALJ's analysis was supported by substantial evidence.

The evidence cited by Davis is not strong enough to disturb this conclusion. The bulk of this evidence comes from treatment notes made <u>prior to</u> Davis's surgery in January of 2013. Pl.'s Objections 2–4. While Davis claims that his complaints of pain were "consistent throughout the medical records," he offers no evidence showing that his complaints remained consistent <u>after</u> his surgery, and this assertion is inconsistent with the evidence showing that his post-surgery pain symptoms were "intermittent." Tr. 454. Because the ALJ's reasoning was based on the improvements in Davis's condition following his surgery, evidence of his pre-surgery condition is not especially relevant. This is clear from the ALJ's decision, which acknowledged that Davis's initial treatment plan failed to improve his condition before explaining the changes he experienced after the surgery. Tr. 22. Thus, the ALJ provided a clear indication of why she did not credit the evidence highlighted in Davis's objections. It was unnecessary for the ALJ to discuss such evidence in greater detail.[7]

---

[7] Though Davis does not mention it in his objections, his reply brief before the magistrate judge attempted to explain that the benefits of the January 2013 surgery should not be considered because Davis re-injured his back following surgery. Pl.'s Reply 3. The court does not decide how this argument should be treated as a matter of law, but finds that it is simply not supported by the facts. While Davis did offer such testimony at the hearing, he indicated that the alleged "re-injury" occurred "two to three months after" the surgery, which would be either March or April of 2013. However, the progress notes cited by the ALJ indicate that Davis reported feeling "far better" than he felt prior to the surgery in July of 2013. Tr. 454. It is clear from the ALJ's decision that she credited these treatment notes over Davis's testimony. Therefore, even if the issue were before the court—which it is not—the court would find Davis's re-injury argument insufficient to disturb the conclusions of the magistrate judge and the ALJ.

### B. Treating Physician Rule

Davis also argues that the ALJ failed to properly consider the opinion of Dr. Glaser. Pl.'s Objection 4–5. The court finds this argument to be without merit.

"Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians." Wooten v. Colvin, No. 4:15-cv-2119, 2016 WL 3912849, at *2 (D.S.C. July 19, 2016) (citing 20 C.F.R. § 404.1527(b). "Known popularly as the 'Treating Physician Rule,' the regulation requires the Commissioner to 'evaluate every medical opinion we receive.'" Steele v. Colvin, No. 1:15-cv-2595, 2016 WL 6269585, at *1 (D.S.C. Oct. 26, 2016) (quoting 20 C.F.R. § 404.1527(c))

> Special consideration is to be given to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the medical professionals most able to provide a [detailed], longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."

Wooten, 2016 WL 3912849, at *2 (alteration in original) (quoting 20 C.F.R. § 404.1527(c)(2)).

> Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh all medical opinions in light of a broad range of factors, including the examining relationship, the treatment relationship, length of treatment, nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist.

Id. (emphasis omitted) (citing 20 C.F.R. §§ 404.1527(c)(l)–(5)).

Here, it is debatable whether Dr. Glaser even offered an opinion that was inconsistent with the ALJ's findings. On February 6, 2013, Dr. Glaser wrote that "it is my medical opinion that Mr. Davis [] remain[s] disable[d] [and] may not return to work until further notice." Tr. 452. This opinion was written less than three weeks after Davis's back surgery and seems to contemplate further improvement in Davis's condition. On July 31, 2013, Dr. Glaser offered another opinion, stating that Davis was "totally disabled" and it was "doubtful he will return to work." Tr. 450. While this opinion was worded more strongly than the February 2013 opinion, Dr. Glaser's contemporaneous treatment records reveal that it is actually more limited. In a progress note written the same day he authored the July 2013 opinion, Dr. Glaser stated, "I filled out [Davis's] disability paperwork saying I am doubtful he will return to work. His job is physically demanding." Tr. 454. This statement makes it clear that Dr. Glaser's July 31, 2013 opinion did not address Davis's ability to work <u>any</u> job, just his ability to return to his previous job. In fact, Dr. Glaser explicitly noted that if "an insurance company or any other entity needs to know his exact ability . . . he will need a functional capacity evaluation." Tr. 454. Of course, the ALJ found that Davis could not return to his past relevant work as a saw operator or floor finisher, Tr. 24, so Dr. Glaser's July 31, 2013 was entirely consistent with the ALJ's analysis.

In any event, to the extent Dr. Glaser's notes could be read to opine that Davis was incapable of performing <u>any</u> work, the court finds that the ALJ sufficiently

explained her reasons for discounting the value of that opinion.[8]  An ALJ may reduce the weight given to a treating physician's opinion where the opinion is not supported by the physician's own records or other available records.  Wooten, 2016 WL 3912849, at *4.  The ALJ properly relied on these factors in discounting Dr. Glaser's opinion in this case, noting that Dr. Glaser's opinion was offered without "any explanation, rationale, clinical findings, or reference to objective testing."  Tr. 23.  Instead, the ALJ found that Dr. Glaser's opinion was based largely on Davis's subjective complaints of pain, which were not supported by the objective medical evidence—particularly, Davis's post-surgery treatment records.  Id.  This analysis is consistent with the Treating Physician Rule.

---

[8] The ALJ's decision only explicitly addressed Dr. Glaser's February 2013 opinion.  Tr. 23.  For the reasons described above, the court sees no error in the ALJ's failure to address the July 2013 opinion, as that opinion was clearly consistent with the ALJ's ultimate conclusion.  Nevertheless, even if the court were to assume that the ALJ needed to address both opinions, the court would find the ALJ's analysis sufficient, as it relied on arguments that were largely applicable to both opinions.

## IV.   CONCLUSION

Based on the foregoing, the court **ADOPTS** the magistrate judge's R&R, and **AFFIRMS** the Commissioner's decision.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 27, 2017**
**Charleston, South Carolina**